**Bertram POWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08-87-00338-CR.**

Court of Appeals of Texas,
El Paso.

Aug. 30, 1989.

Rehearing Denied Oct. 18, 1989.

Ruth Marks, Odessa, for appellant.

R.C. "Eric" Augesen, Dist. Atty., Gary Garrison, Dist. Atty., Odessa, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

OPINION

FULLER, Justice.

Appellant was convicted of murder, and the jury assessed punishment at thirty-five years' confinement in the Texas Department of Corrections. We reverse.

Point of Error No. One asserts that the trial court erred in denying Appellant's Motion for Change of Venue.

Appellant was indicted for the offense of murder on February 2, 1987. On October 5, 1987, retained counsel entered the case and filed numerous motions on that date. The case was set for trial on November 16, 1987.

The trial court conducted pretrial hearings on October 21, 1987, as authorized by Article 28.01 of the Tex.Code Crim.Pro. Ann. (Vernon 1989). On that date, Appellant announced they were ready for rulings on the motions that were presently on file. They also indicated to the court that they had additional motions to file but at this point did not state to the trial court what the additional motions were. The trial court stated:

If you haven't filed them and I got to have an evidentiary hearing on them, Mr. Campion, and you haven't filed them before today, you waited too long.

. . . . .

You can file what you need to, but I am not going to have any hearings on the matters that have not been filed because this is the pretrial which I gave you sufficient notice on so you could get those filed. And that is the reason that I will have the pretrial here today. I do not have any other time between today and the date I set the case for trial available for the purpose of hearing the other motions. That is the reason that I gave you sufficient time to get your motions over here.

The record then indicates that Appellant advised the court that one of the motions he had brought with him was a Motion to Continue the Pretrial. No mention at that time was made of any Motion for Change of Venue. The trial court commenced hearing the Appellant's Motion for Dis-covery consisting of over forty matters for discovery. The trial court made rulings on the discovery motion, and at the end of pretrial hearing he advised counsel that the trial was set first for November 16. Defense counsel then advised the trial court as follows:

In addition to the motion for continuance that I would like *to file for record this morning,* the other motions that I brought with me are the ones *that are still being investigated;* primarily *a motion for change of venue.* We are still interviewing local residents. And in the process of acquiring affidavits, it is my understanding that once those affidavits are obtained, and I expect they will be, we *will be filing a formal motion for change of venue.* [Emphasis added].

The Appellant's attorney then stated to the court:

We would have no objection to the Court withholding ruling and/or hearing on that matter until jury selection, if the Court so desires.

This pretrial hearing was conducted in the morning of October 21, and the Appellant's attorney apparently did what he said he would do and filed his Motion for Change of Venue with the attached affidavits after the pretrial hearing but on the same date (October 21, 1987). The certificate of service shows that a copy of the motion was hand delivered to the district attorney's office on the same date (October 21, 1987). Following the certificate of service, but on the same page, is contained a caption titled "ORDER". The order states:

BE IT REMEMBERED that on this 21st day of October, 1987, came on to be heard the foregoing Motion and it is hereby DENIED.

SIGNED this 21st day of October, 1987.

/s/ Gene Ater
JUDGE PRESIDING

■ No controverting affidavits had been filed by the State, and no hearing had been had at the time Judge Ater signed the above order. The Motion for Change of Venue complied with Article 31.03 of the Tex.Code Crim.Pro.Ann. (Vernon 1989) and

should have been granted. Controverting affidavits were filed by the State on November 4, but this was after the denial of the Motion for Change of Venue.

On November 16, 1987, the day of trial on the merits, but prior to voir dire examination of the jury panel, Appellant reurged the Motion for Change of Venue and requested a hearing. The trial court responded:

> Well, it is a little late to be urging that at this time, you filed it after the pretrial hearing, and I am not going to take it up at this time.
>
> I will carry the matter over for consideration, and if we are unable to pick a jury out of these 60 people then I will give it serious consideration at that time. But I think we can pick a jury out of 60 people.
>
> Overrule both your motion for continuance and change of venue at this time.

■ The trial court erred in failing to afford Appellant a hearing to present evidence to support his reurged Motion for Change of Venue. *Henley v. State*, 576 S.W.2d 66 (Tex.Crim.App.1978); *O'Brient v. State*, 588 S.W.2d 940 (Tex.Crim.App. 1979).

The record indicates clearly that the trial judge on October 21, 1987, denied the Motion for Change of Venue, not on the contents, but upon his opinion that the motion was untimely. The trial court erred, and the Appellant was and is entitled to have his motion granted. *Revia v. State*, 649 S.W.2d 625 (Tex.Crim.App.1983); *Fields v. State*, 627 S.W.2d 714 (Tex.Crim.App.1982); *Biegajski v. State*, 653 S.W.2d 624 (Tex. App.—San Antonio 1983, PDRR).

Point of Error No. One is sustained.

Points of Error Nos. Two, Three and Four assert insufficiency of the evidence contentions.

Appellant argues that the evidence is insufficient to show that he shot the decedent Richardson and that he caused Richardson's death. He also contends that the evidence is insufficient to sustain his conviction as a party to the offense.

In reviewing Appellant's claim, this Court must consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App. 1981). In making its review, this Court should review all the evidence in the light most favorable to the verdict. *Drager v. State*, 548 S.W.2d 890 (Tex.Crim.App.1977); *Clark v. State*, 543 S.W.2d 125 (Tex.Crim. App.1976). We may not, however, review the credibility of the witnesses, the weight to be given their testimony, nor the resolution of conflicts in the testimony and other evidence; these are in the exclusive province of the jury or trier of fact. *Esquivel v. State*, 506 S.W.2d 613 (Tex.Crim.App. 1974).

The State's first witness, Melvin Jenkins, testified that he was talking with the deceased, Fred Charles Richardson, and his brother, Lewis Richardson, who were sitting in a car parked in the street. Jenkins was outside the car, talking to the pair through the open car window. Arthur Lee Powell, Jr., a brother of the Appellant, came up to the car window and put a gun to Lewis Richardson's head. Jenkins testified that he also spotted Appellant at a nearby corner (about 100 feet away) holding a pistol down at his side. Apparently because the deceased—not Lewis—was the man he was looking for, Arthur Powell backed away from the car. The deceased then jumped out of the car, saying "I am tired of this." Jenkins, who was between the deceased and Arthur, got out of the way by diving into another nearby car and then the shooting started. When Jenkins looked up, he saw the deceased running around the corner and it appeared to him that the deceased was chasing Arthur and the Appellant, or at least heading in their direction. According to Jenkins, the deceased had something in his hand. Shortly thereafter, he heard more gunshots.

Joyce Fay Lowe testified that on the night of the murder, March 17, 1986, she came out of the house at the sound of the shooting. She testified that she saw a man shooting at another man who fell to the

ground. She identified the assailant as Arthur Lee Powell, Jr., and the victim as the deceased. There was a third man present on the scene, but she could not identify him because he was too far away.

Feba Jackson testified that she first heard and then saw the two men scuffling with a third man at the side of her house. The men ended up on her porch; two men were still manhandling the third, who was down on the ground. Then the shooting started. She saw one man—whom she identified as Arthur Lee Powell, Jr.,—was bent over the third man and was shooting. She could tell, however, that there was more than one person shooting. She did not identify the second assailant, although she admitted that, at an earlier trial, she had identified this man as Carl Powell, another brother of the Appellant.

Eric Mitchell testified that, on the night of the shooting, he heard sounds outside his house and went to the door to investigate. He saw two people standing across the street in Feba Jackson's yard shooting at the ground. The two people then got into a car and fled the scene.

Dr. Carl Robert Evans, a pathologist, testified that he performed an autopsy on the deceased on March 19, 1986, and the cause of death was multiple gunshot wounds to the face and chest. Two bullets entered the chest and due to the angle of these bullets, the victim was probably standing sideways to his assailant at the time of the shooting. There were multiple wounds to the head. The head wounds were probably from shots fired straight on from very close range and would be consistent with the assailant firing upon a victim lying prone on the ground. The doctor testified that any of these wounds would have been fatal.

Lewis Richardson, the brother of the deceased, testified that Arthur Lee Powell, Jr., Carl Powell and Bertram Powell (the Appellant) were all present in the area when the deceased was killed. He admitted at the previous trial that he had testified that Appellant was not there.

Defense witness Julius Tave testified that he saw three men running up the street the night of the shooting. The deceased was chasing Arthur Lee Powell, Jr., and another Powell. Tave could not identify which Powell brother it was. He said all three men were shooting.

This evidence is sufficient to support Appellant's conviction. Appellant was seen immediately prior to the incident in the vicinity of the shooting with a pistol in his hand. The deceased was seen chasing Arthur Lee Powell, Jr., and another man; all three men were shooting. The jury could have concluded that this unidentified man was the Appellant. Similarly, the jury could have concluded that the person who aided and assisted Arthur Powell in manhandling the victim shortly before the shooting was the Appellant. Also, Appellant was seen fleeing the scene of the shooting. Appellant's intent to promote and assist in the commission of this offense may be inferred from this evidence. *Romo v. State*, 568 S.W.2d 298 (Tex.Crim.App. 1978); *Binyon v. State*, 545 S.W.2d 448 (Tex.Crim.App.1976). Also, since Appellant and Arthur Lee Powell, Jr., acted together, it is immaterial which shot actually resulted in the victim's death. *Clay v. State*, 505 S.W.2d 882 (Tex.Crim.App.1974); *Johnson v. State*, 644 S.W.2d 503 (Tex.App.—Corpus Christi 1982, PDRR).

Points of Error Nos. Two, Three and Four are overruled.

Because of the sustaining of Point of Error No. One, it is unnecessary to discuss the remaining points of error.

The judgment of the trial court is reversed, and the case is remanded to the trial court with instructions to transfer venue for purposes of a new trial.