**Joe FLORES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–89–00075–CR.**

Court of Appeals of Texas, El Paso.

Jan. 17, 1990.

Kevin Wilson, Odessa, for appellant.

Gary Garrison, Dist. Atty., Odessa, for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

FULLER, Justice.

Appellant was convicted by a jury of delivery of heroin, a controlled substance. Punishment, enhanced by two prior felonies, was assessed at sixty years' confinement in the Texas Department of Corrections. We reverse and render.

An Ector County grand jury had already been impaneled and had indicted Appellant at the time he was arrested. He thereafter, on October 6, 1988, filed his pro se Motion to Quash the Indictment based on the selection of the grand jury. Under Tex.Code Crim.Pro.Ann. arts. 19.27 and 19.-30 (Vernon 1977 and Supp.1990), a challenge to the grand jury array must be made before it is impaneled, or if that is not possible, at the earliest possible time. *Muniz v. State,* 672 S.W.2d 804 (Tex.Crim. App.1984). We find that Appellant's Motion to Quash was timely filed. This motion basically asserted that there was an underrepresentation of Mexican–Americans on the grand jury that indicted him in violation of the equal rights protection afforded him by the constitution. The trial court along with the State and the Appellant agreed that the motion would be continued until after the trial so that an evidentiary hearing could be had. On December 6, 1988, a guilty verdict was returned by the jury. The record indicated that on December 9, 1988, the judgment and sentence was signed and filed. Appellant through his attorney filed a Motion to Recuse or Disqualify Judge, and, as a result, a visiting judge was assigned to hear the post-trial motions, including the pretrial Motion to Quash the Indictment.

Appellant attempted to broaden his attack on the selection of the grand jury by filing on April 13, 1989, an "Amended Motion to Quash and Challenge to Array." This amended motion was filed eight months after the indictment, long after an attorney was appointed to represent Appellant, and over four months after the guilty verdict was returned by the jury. Appellant attempts to further broaden his attack by his first three points of error by contending that a twelfth grand juror was improperly selected; that the grand jury commissioners were not from different parts of the county and that additional information was improperly furnished the grand jury commission to aid them in selecting grand jurors. Appellant has waived these later contentions because he had an opportunity to fully challenge the array of the grand jurors at the time he first filed his Motion to Quash the Indictment. The sole agreement made prior to trial was that the Motion to Quash already on file would be heard after the jury verdict. There was no agreement to broaden or assert new complaints and, therefore, Appellant's addi-

tional grounds of attack on the grand jury selection are untimely. *Muniz v. State,* 573 S.W.2d 792 (Tex.Crim.App.1978). Article 19.27 Tex.Code Crim.Pro.Ann.

Points of Error Nos. One, Two and Three are overruled.

Point of Error No. Four asserts that the trial court erred in failing to quash Appellant's indictment because the grand jury that indicted Appellant was underrepresentative of Mexican–Americans.

■ The general principle which prohibits excluding persons from participating in jury service because of their race is basically the same for grand juries. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ In Ector County, the method of selecting grand jurors is by the grand jury commission or the "key-man" system. While this method of selection has been upheld as constitutional, it has also been aptly described as being highly subjective, archaic and inefficient. Its potential for abuse is great. *Partida v. Castaneda,* 384 F.Supp. 79 (S.D.Tex.1974), *rev'd,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).

We are seeing more appeals concerning this system of selection. We are bound by the record made below. *Evans v. State,* 622 S.W.2d 866 (Tex.Crim.App.1981).

*Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), sets forth the proof requirements to find that an equal protection violation occurred in the grand jury selection. The Appellant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs by establishing:

(1) The group he belongs to is a recognizable, distinct class which has been singled out for different treatment under the laws, either as they are applied or written; *Hernandez v. Texas,* 347 U.S. [475] at 478–479, 98 L.Ed. 866, 74 S.Ct. 667[( )]; and

(2) The degree of underrepresentation, by comparing the proportion of the group in the total population to the proportion called to served as grand jurors, over a significant period of time. *Hernandez v. Texas,* 347 U.S. at 480, 98 L.Ed. 866, 74 S.Ct. 667 [671]; and

(3) The selection procedure is susceptible of abuse or is not racially neutral and thereby supports the presumption of discrimination by the statistical showing.

Once Appellant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose and the burden then shifts to the State to rebut that case. *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498.

In the instant case, Appellant has established that Mexican–Americans are recognized as being a clearly identifiable class with a history of being subjected to discriminatory treatment. *Hernandez v. State,* 347 U.S. 475, 478–80, 74 S.Ct. 667, 670–671, 98 L.Ed. 866, 870–871 (1954). The evidence showed that Appellant was indicted by a grand jury composed of only one Mexican–American. In addition, the evidence showed the evaluation of 31 prior grand juries covering a period of 9 years in which 372 persons served. Of the 372 persons only 45 had Spanish surnames, which represents only 12.1 percent of the total. This indicates a disparity of 11.03 percent when subtracted from the mean population figure for the Hispanic population for the preceding years. The 1980 census showed the ratio of Mexican–Americans in Ector County, Texas to be 21.52 percent of the total population. In 1986, the percentage of Mexican–Americans in Ector County was estimated to be 24.74 percent of the total population. Evidence presented showed there was an underrepresentation of 47.69 percent of Mexican–Americans that served on grand juries compared to the total Mexican–American population, when a mean average of 23.13 was used. This indicates Mexican–Americans served only half as frequently on the grand jury as should be expected.

Disparities such as those presented in the instant case have been held to be sufficient to establish a prima facie case of

discrimination against Mexican–Americans in the selection of grand juries. *Cerda v. State,* 644 S.W.2d 875, 877 (Tex.App.—Amarillo, 1982, no writ).

Appellant having made a prima facie case, the burden then shifted to the State to present rebuttal evidence of racially neutral practices. The State has totally failed to sustain its burden. Appellant's denial of equal protection of the law challenge should have been sustained by the trial court.

This opinion should not be construed as any criticism of the district judges of Ector County that employ the key-man system of grand jury selection. However, if this method of selection is to be continued, extreme care must be used to prevent potential abuse or to avoid an inference of purposeful discrimination.

Point of Error No. Four is sustained.

We reverse the judgment of conviction and render judgment dismissing the indictment against this Appellant.