**Marcos GUTIERREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–95–00528–CR.**

Court of Appeals of Texas,
San Antonio.

July 31, 1997.

Rehearing Overruled Sept. 9, 1997.

---

Fernando Cortes, San Antonio, for Appellant.

W.C. Kirkendall, District Attorney, Frank Follis, Assistant District Attorney, Seguin, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

Marcos Gutierrez was convicted of first-degree murder and sentenced to life in prison. In two points of error Gutierrez complains that his right to equal protection was violated by the Guadalupe County grand juror selection process, and that the trial court erred in not granting his motion to transfer venue. We decline to apply a more stringent mathematical standard than one endorsed by the Supreme Court decades ago and to find systematic exclusion of Spanish-surnamed Americans of Mexican descent from Guadalupe County's grand juries. However, because we find the trial court erred in not considering the merits of Gutierrez' motion to transfer, we reverse and remand.

## EQUAL PROTECTION

In his first point of error, Gutierrez claims that the trial court erred in overruling his motion to quash the indictment because the class of Spanish-surnamed Americans of Mexican descent[1], of which Gutierrez is a member, was systematically excluded from grand jury service in Guadalupe County.

In 1994, Gutierrez was indicted by a Guadalupe County grand jury, which was empaneled by what is called the "key-man" system. This system required jury commissioners, appointed by a district judge, to select and make a list of prospective jurors. Gutierrez claimed this system denied him equal protection of the law, and that the court committed reversible error in overruling his motion to

1. This is the class as defined by Gutierrez' point of error.

quash the indictment because he presented an unrebutted, prima facie case of an equal protection violation. We disagree.

## 1. Establishing the Prima Facie Case

Nearly two decades ago, in *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), the United States Supreme Court set forth the elements of a prima facie case of discrimination in the selection of grand jurors. Under *Castaneda*, the defendant must show that the selection system employed resulted in substantial underrepresentation of his race by establishing:

(1) the group is a recognizable, distinct class that has been singled out for different treatment under the laws;

(2) the degree to which the group was underrepresented by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors over a significant period of time; and

(3) the selection process is either susceptible to abuse or is not racially neutral.

*Castaneda*, 430 U.S. at 494 [97 S.Ct. at 1280]. "Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case." *Id.* at 495 [97 S.Ct. at 1280]. When the state declines to rebut such a showing, they do so at their peril.

■ Gutierrez, however, has failed to make out a prima facie case of discriminatory purpose. Although he meets the first and third prongs of the *Castaneda* test, he has failed to demonstrate, under the second prong, that Spanish-surnamed Americans of Mexican descent have been underrepresented on Guadalupe County grand juries by a legally significant amount over a significant period of time.

The first element set out in *Castaneda* is here satisfied because Spanish-surnamed Americans of Mexican descent are recognized as a clearly identifiable class with a history of being subjected to discriminatory treatment. *Hernandez v. Texas*, 347 U.S. 475, 478–80, 74 S.Ct. 667, 670–71, 98 L.Ed.

866 (1954). The third element is met as well because, while the key-man system has been upheld as facially constitutional, *Carter v. Jury Comm'n*, 396 U.S. 320, 332–37, 90 S.Ct. 518, 524–28, 24 L.Ed.2d 549 (1970), the system is susceptible to abuse as applied. *Hernandez*, 347 U.S. at 479, 74 S.Ct. at 671. Many Texas jurisdictions have abandoned this system for that reason.

Gutierrez, however, cannot meet the second prong of the *Castaneda* test unless we apply an analysis more stringent than the Supreme Court has required. Because we believe Supreme Court action in this area was spurred by compelling historical circumstances, we will not author a more stringent standard.

## 2. The Statistics

In an attempt to meet the second element of the *Castaneda* test, Gutierrez presented evidence at the hearing on the motion to quash the indictment showing that, pursuant to the 1993 Texas Estimated Population table made a part of the Texas Vital Statistics Annual Report for 1993, Spanish-surnamed individuals made up 31.35% of the total population of Guadalupe County. Gutierrez also produced lists of the individuals who were summoned and who served as grand jurors from 1987 to 1994, which established the following:

(1) only 21.25% of those summoned during this time period had Spanish surnames, a disparity of 10.1% between the proportion of the group in the total population in 1993 and the proportion that were summoned between 1987 and 1994; and

(2) only 18.84% of the grand jurors who served during this time period had Spanish surnames, a disparity of 12.5% between the proportion of the group in the total population in 1993 and the proportion that actually served from 1987 to 1994.

Gutierrez also showed that of the 12 members of the grand jury which indicted him, only two had Spanish surnames.

The United States Supreme Court has never promulgated precise mathematical

standards to determine at what point a denial of equal protection by the "systematic" exclusion of an identifiable class from jury service occurs. *Alexander v. Louisiana*, 405 U.S. 625, 630, 92 S.Ct. 1221, 1225, 31 L.Ed.2d 536, 541 (1972). The Court has held only that when suspect systems such as the one employed in Guadalupe County are used, a sufficiently large disparity over a significant period of time supports a presumption of unconstitutional purposeful discrimination. *Castaneda*, 430 U.S. at 493–94, 97 S.Ct. at 1279–80. The disparities in this case, however, between the proportion of Spanish-surnamed persons in the total population in 1993 and the proportion of Spanish-surnamed individuals summoned to serve (10.1%) and who served as grand jurors (12.5%) between 1987 and 1994, are lower than the disparities found to be sufficient by both the United States Supreme Court and Texas courts considering this issue.[2]

Our research has disclosed only one Supreme Court case—*Jones v. Georgia*, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967)—finding a prima-facie showing of an Equal Protection violation at a level lower than 15 percent discrepancy. A review of the circumstances surrounding *Jones* illustrates why we believe Gutierrez does not present a sufficiently compelling argument to justify a more stringent standard to be applied to Guadalupe County.

### 3. The Georgia Grand Jury Cases

*Jones* was a two-page *per curiam* opinion in which the Supreme Court held that Georgia officials had misapplied its earlier holding in *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967).

Whitus was convicted of murder in 1960; at that time, no African–American had served on a jury in that county in any witness' memory. *Whitus*, 385 U.S. at 547–48,

87 S.Ct. at 644–45. His conviction reached the Supreme Court and was eventually reversed on that disparity; Whitus was tried and convicted again. *Id.* On appeal from that conviction, Whitus showed the grand jury and petit jury lists had been derived from taxpayer digests which were still segregated by race. *Id.* at 551, 87 S.Ct. at 647. He also showed there was still an 18.0% disparity between the grand jury venire and the number of African–Americans on the taxpayer rolls. *Whitus*, 385 U.S. at 548–49, 87 S.Ct. at 645–46. These circumstances, the Court held, were sufficient to make out a prima facie case of "purposeful discrimination." *Id.* at 551, 87 S.Ct. at 647.

*Jones* was decided nine months after *Whitus*. While the petitioner in *Jones* showed a 14.7 percent discrepancy, that case's statistical analysis is relegated to a footnote. *Jones*, 389 U.S. at 25, 88 S.Ct. at 5–6. The specific holding in *Jones* is that the state cannot rely on a presumption that public officials have properly discharged their duties to satisfy the burden of explaining "the disparity between Negroes on the tax digest and those on the venires." *Jones*, 389 U.S. at 25, 88 S.Ct. at 5 (quoting *Whitus*, 385 U.S. at 552, 87 S.Ct. at 647–48).

*Jones* and *Whitus*, read together, appear to be less about creating a statistical yardstick for future cases than about forcing recalcitrant Georgia officials to confront and eliminate the last vestiges of *de jure* discrimination in their state's criminal justice system. We find no evidence in this record of intentional or *de jure* discrimination against members of the class in this community. We therefore doubt Gutierrez' case is a convincing one for extending the *Jones* statistical standard into a later time and a different cultural context.

2. *See Castaneda*, 430 U.S. at 495–96, 97 S.Ct. at 1280–81 (40% disparity more than adequate); *Whitus v. Georgia*, 385 U.S. 545, 550–51, 87 S.Ct. 643, 646–47, 17 L.Ed.2d 599, 604 (1967) (18% disparity sufficient to make out prima facie case); *Jones v. Georgia*, 389 U.S. 24, 24–25, 88 S.Ct. 4, 5, 19 L.Ed.2d 25, 26 (1967) (14.7% disparity sufficient); *Flores v. State*, 783 S.W.2d 793, 795–96 (Tex.App.—El Paso 1990, no pet.) (47.69% disparity required reversal); *Cerda v. State*, 644 S.W.2d 875, 878 (Tex.App.—Amarillo 1982, no pet.) (mean disparity of 16.97% over eleven-year period enough to establish prima facie case); *cf. Guerra v. State*, 760 S.W.2d 681, 685 (Tex.App.—Corpus Christi 1988, pet. ref'd) (2.7% disparity not significant enough to show prima facie case of ethnic discrimination).

### 4. Underrepresentation over a significant period of time

There are evidentiary problems with Gutierrez' case as well. As we noted in the discussion above, while participation in the grand jury system was represented by statistics over a seven-year period, the disparity was measured against one figure—the 1993 population estimate showing the percentage of class members in the county. The State argued both at the hearing on the motion to quash the indictment and in this appeal that because Gutierrez presented only the 1993 report, he failed to establish a prima facie case of statistical underrepresentation over a significant period of time as he presented no evidence demonstrating the Hispanic–American population in the county from 1987 to 1992. We agree that Gutierrez is asking us to compare apples to oranges. Without population estimates for these years, or evidence that such statistics were not available for these years,[3] Gutierrez has failed to demonstrate systematic underrepresentation of class members on Guadalupe County grand juries. Other courts considering this issue have required no less. *See Castaneda*, 430 U.S. at 495 n. 15, 97 S.Ct. at 1280 n. 15 (accepting argument that 1970 census estimates remained constant only because 1960 census did not compile separate statistics for Spanish-surnamed persons); *Cerda*, 644 S.W.2d at 877–79 (reversing conviction on equal protection grounds only after comparing percentage of Spanish-surnamed individuals listed in 1970 census records and 1969–70 and 1979–80 school enrollment records to grand jury panels for 1969–79); *cf. Stanley v. State*, 678 S.W.2d 80, 80 n. 1 (Tex.Crim. App.—1984) (Clinton, J., dissenting from refusal of PDR) (accepting comparison of 1970 census to fourteen years of grand jury information only because State failed to object to data), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3481, 87 L.Ed.2d 616 (1985).

Moreover, when we consider only the statistics regarding the composition of Guadalupe County grand juries for 1993—the only year for which Gutierrez presented a complete set of statistics—the disparities between the percentage of Spanish-surnamed individuals in the county and those summoned are negligible at best. Thirty percent of those summoned for grand jury service in 1993 were Spanish-surnamed individuals, a disparity of only 1.35% between the percentage summoned and the percentage of Spanish-surnamed individuals in the Guadalupe County population. The evidence further illustrated that, of those who actually served on Guadalupe County grand juries during 1993, 25% were Spanish-surnamed individuals, a disparity of only 6.35% when compared to the population percentages.

We therefore conclude that Gutierrez has failed to establish a prima facie case of purposeful discrimination and overrule his first point of error.

## MOTION FOR CHANGE OF VENUE

■ Gutierrez argues in his second point of error that the trial court should have granted his motion for change of venue as a matter of law because his properly verified application was not controverted, he did not waive the requirement that the State produce a controverting affidavit, and no evidentiary hearing justifying the denial of the motion was conducted. We agree.

■ "The presentation of an application for change of venue, properly verified, makes it incumbent upon the trial judge to change the venue, unless the application is controverted in the manner prescribed by statute, or unless the controverting affidavit is waived by the accused, and evidence heard justifying the denial of the motion." *Stapleton v. State*, 565 S.W.2d 532, 533–34 (Tex. Crim.App.1978) (quoting *Cox v. State*, 90 Tex.Crim. 106, 234 S.W. 72 (1921)); *see Cooks v. State*, 844 S.W.2d 697, 730 (Tex. Crim.App.1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Fields v. State*, 627 S.W.2d 714, 719 (Tex. Crim.App.), *cert. denied*, 459 U.S. 841, 103 S.Ct. 91, 74 L.Ed.2d 84 (1982); *Clarke v.*

---

3. Gutierrez presented no evidence tending to establish that population estimates reflecting the percentage of Spanish-surnamed individuals in Guadalupe County were not available for the years of 1987 through 1992. The annual nature of the 1993 report, however, leads us to believe that such statistics were available for the preceding years.

*State,* 928 S.W.2d 709, 718 (Tex.App.—Fort Worth 1996, pet. ref'd).

The following chain of events transpired prior to the date on which Gutierrez filed his motion for change of venue. First, a pretrial hearing was held on October 19, 1994 to determine whether a reduction of Gutierrez' bond was in order. Additional pretrial hearings were set for November 4, 1994, and trial was set for November 7, 1994. On November 4, 1994, a hearing was held on Gutierrez' motion to continue the November 7 trial date. The motion was granted, and the court scheduled pretrial hearings for November 16, 1994 and reset the trial for December 5, 1994. On November 22, 1994, a pretrial hearing was held on three motions filed by Gutierrez, one of which requested another continuance and none of which pertained to a change of venue. The court granted the motion for continuance, resetting the trial date for January 24, 1995, and set a hearing on a motion to quash the indictment filed by Gutierrez for December 14, 1994. At the hearing on December 14, 1994, the court heard the motion to quash the indictment, but no motion for change of venue was filed or mentioned.

Gutierrez did not file his motion for change of venue until 9:40 a.m. on January 24, 1995, the day on which his jury trial was to begin. Gutierrez filed another motion for continuance along with his motion for change of venue. The trial judge denied the motion for change of venue as not timely filed, and granted the motion for continuance. However, in light of the continuance, the trial judge told Gutierrez that he could reurge his motion for change of venue. In anticipation of Gutierrez reurging his motion, the State filed controverting affidavits later the same day at 4:50 p.m. Between January 24, 1995 and February 28, 1995, the day the case was called for trial, at least two more pretrial hearings were held on motions filed by Gutierrez, yet Gutierrez refused to reurge his motion for change of venue. The trial court never withdrew its ruling.

It is clear from the record before us that the court did not rule on the contents of the motion for change of venue, but merely denied it because it was untimely filed. This very issue was considered by the Texas Court of Criminal Appeals in *Revia v. State,* 649 S.W.2d 625 (Tex.Crim.App.1983). In *Revia,* the trial court denied the appellant's motion for change of venue, holding it was not timely filed when it was presented for the first time at the start of voir dire examination of the jury panel. *Id.* at 626–27. In reversing Revia's conviction, the court found that it had "no other alternative than to hold the trial judge reversibly erred when he denied appellant's motion simply because it was not timely filed." *Id.* at 627. The court noted that *Enriquez v. State,* 429 S.W.2d 141 (Tex.Crim.App.1968) held that time limitations applicable to other pretrial motions should not apply to motions for change of venue because under recent Supreme Court decisions, change-of-venue questions have become questions of constitutional dimension. *Id.* at 626. The court noted that in its decisions since *Enriquez,* it "has looked primarily to Article 31.03, V.A.C.C.P., when deciding whether a motion for change of venue is properly filed." *Id.*

Gutierrez' motion complied with TEX.CODE CRIM. PRO. ANN. art. 31.03 (Vernon 1989), which requires that the motion be written, supported by the defendant's own affidavit and the affidavits of two credible persons in the county of prosecution, and based upon one of the following causes:

1. That there exists in the county where the prosecution is commenced so great a prejudice against [the defendant] that he cannot obtain a fair and impartial trial; and

2. That there is a dangerous combination against him instigated by influential persons, by reason of which [the defendant] cannot expect a fair trial.

Gutierrez' motion was properly filed and was uncontroverted by the State when it was denied by the trial court. Accordingly, the trial court erred in denying Gutierrez' motion for change of venue without an evidentiary hearing. *See Faulder v. State,* 745 S.W.2d 327, 338 (Tex.Crim.App.1987) (reaffirming holding in *Revia* that because change of venue is of constitutional dimension, time requirements applicable to other pretrial motions do not apply to motion for change of

venue); *Powell v. State*, 777 S.W.2d 466, 468 (Tex.App.—El Paso 1989, pet. ref'd) (following *Revia* and holding that trial court erred when it denied motion for change of venue not on contents, but because motion was untimely filed after pretrial hearing); *Biegajski v. State*, 653 S.W.2d 624, 627 (Tex.App.—San Antonio 1983, pet. ref'd) (relying on *Revia* to hold that trial court erred in denying motion for change of venue because it was untimely filed on day of trial).

We also note that while the trial court invited Gutierrez to re-urge his motion, the trial court never withdrew the ruling. Without a prior ruling Gutierrez would not have preserved a complaint for appellate review.

■ We recognize that the State, not to mention the trial court, is put in a precarious position by the present state of the law. As the Fort Worth Court of Appeals recognized when it considered this issue, "[t]he State, when met with a motion for change of venue at a time suspiciously close to trial, is left with the disheartening choice of hoping defense counsel will waive error by putting on evidence, present a motion for continuance or be faced with a change of venue as a matter of law through no fault of its own." *Jones v. State*, 753 S.W.2d 837, 839 (Tex.App.—Fort Worth 1988, pet. ref'd). We agree with the Fort Worth court, however, that the State should request either a recess or a continuance in situations such as this one to allow sufficient time to prepare controverting affidavits. *See id.* We sustain Gutierrez' second point of error.

The judgment of the trial court is REVERSED and REMANDED for further proceedings in accordance with this opinion.

HARDBERGER, C.J., concurs.

DUNCAN, J., dissents.

HARDBERGER, Chief Justice, concurring.

I concur with the majority. I write separately only to emphasize the importance of the State's burden to rebut a charge by the defendant of racial disparity between grand jury composition and the population of the county. We decline today "to apply a more stringent mathematical standard than one endorsed by the Supreme Court decades ago...." I agree, but part of my agreement is because of the paucity of proof of the defendant showing there was racial discrimination. An entire county should not be condemned of racial discrimination unless there really is discrimination, and it is proven. This was not the case before us, but the fact that the charge was made deserves a careful hearing and prompt attention by the State.

What constitutes "substantial underrepresentation" is to some extent in the eyes of the beholder. How much racial disparity is too much disparity? Any disparity is too much disparity, in this writer's opinion, if it extends over a length of time that would indicate purposeful discrimination. Length of time is important because there is always the possibility of statistical anomalies if we look at only a single event.

Here, we were shown only the 1993 figures of the Texas Vital Statistics. This showed the percentage of people with a Spanish surname in comparison with those people who did not have a Spanish surname in 1993. There has been so much inter-marriage in Texas that the authenticity of these figures to show true breakdowns between Anglo–Americans and Mexican–Americans is suspect at best. Many Anglo–American women, now married to Mexican–American men, carry a Mexican–American name. Many Mexican–American names have been anglicized to the extent that even though the people involved are of Hispanic heritage, the name does not sound it.

An even greater problem, though, is we are asked to compare the 1993 figure with grand jury composition over a seven-year period between 1987 and 1994. The State produced no figures of their own, so in the end this court is left, as was the trial court, with a serious allegation of purposeful racial determination and little or no proof from either the defendant or the State as to the validity of the charges.

I join in the majority in overruling Defendant's first point of error because I do not know, and cannot tell by the state of the record, whether there is any truth in the defendant's allegations.

DUNCAN, Justice, dissenting.

I respectfully dissent. Gutierrez correctly states he would be entitled to a change of venue as a matter of law if the trial court denied his sufficient motion to change venue at the January 24, 1995 pretrial hearing in the absence of a hearing or controverting affidavits. *E.g., Foster v. State,* 779 S.W.2d 845, 855 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639 (1990).

However, as the State points out, while the trial judge initially denied Gutierrez's motion to change venue at the January 24 hearing, after granting Gutierrez's motion for continuance, he indicated he would reset Gutierrez's motion to change venue.

The Court: You filed a motion for change of venue?

The Cortes: Yes, Your Honor.

The Court: Okay, and I will deny that motion.

Mr. Kirkendall: Your Honor, I would like the record to reflect that this case has been set for pretrial on at least three prior occasions, the most recent being yesterday, the 23rd.

Today, the 24th, is the date they filed their motion for change of venue and handed it to me just this moment. Article 28.01 of the Code of Criminal Procedure requires that any such motion be filed at least 7 days before pretrial or be waived.

The Court: I denied it as far as the change of venue is concerned.

. . . .

Mr. Kirkendall: Your Honor, is there another pretrial date we could have for the—

The Court: Yes. I would like to—

Mr. Kirkendall: —the motion for change of venue, particularly.

The Court: All right, let me do this.

Mr. Kirkendall: It is going to have to be an evidentiary motion.

. . . .

The Court: In fact, before you leave here today, we are going to come up with a date for that pretrial, okay? All right.

In line with these comments, the trial judge reset the trial for February 28 and scheduled another pretrial hearing for January 27. After this pretrial hearing, the State filed controverting affidavits.

At the January 27 hearing, the trial judge attempted to take up Gutierrez's motion to change venue but Gutierrez refused to present the motion:

**PROCEEDINGS**

Friday, January 27, 1995

The Court: The criminal case for today is Cause No. 94–1081–CR, the State of Texas vs. Marcos Gutierrez.

Mr. Kirkendall: The State is ready, Your Honor.

Mr. Cortes: Defendant is ready, Your Honor.

The Court: Is the defense ready?

Mr. Cortes: We're ready to proceed.

The Court: We're here on a hearing on your motion for change of venue. Is that correct?

Mr. Cortes: I would object to the proceeding as far as that is concerned, Your Honor. My understanding is that my change of venue was denied a couple of times on the record on Tuesday.

The Court: Okay. Now, do you want a hearing?

Mr. Cortes: No, Your Honor. I don't want a hearing.

The Court: We're on the record now, sir. And what I'm concerned about is— if you want a hearing, this is your opportunity.

Mr. Cortes: I will object to the proceedings on the motion for new trial, especially in light of *Stapleton v. State,* 565 S.W.2d 532, which indicates that as a matter of law, I would have been entitled to a change of venue if the State did not present controverting affidavits or evidence controverting my motion, which

was not done. My motion was denied without any evidence or, essentially, a hearing.

Mr. Kirkendall: Your Honor, just so the record is complete, Counsel did not file a motion for change of venue through three pretrials and one pretrial conference and shows up the day of trial with a motion for change of venue.

The Court denied it based on, I assume, our objection which— it was late filed. It was not filed more that seven days before the pretrial hearing. Then, when the Court granted the continuance, which was the other motion, the Court set this hearing for today. We, subsequently, properly filed controverting affidavits, which I assume Counsel has received.

The State is ready. I have my witnesses on standby. I have one conflict at 9:30; and I would like to be excused to go to that because it was prior scheduled, and some people are coming in from out of state. But other than that, the State is ready to go this morning.

The Court: All right.

Mr. Cortes: The change of venue issue is a constitutional issue. I can raise it anytime before I announce ready for trial, which I did.

Again, it was denied. It was not set for a hearing. And subject to the hearing, maybe it would be denied. It was denied without a hearing and without controverting affidavits. The denial was not based on anything other than—

The Court: It was denied based on the fact that you did not timely file it. You were set for trial, okay. Tuesday, January 24, 1995. You knew that.

And the record will reflect that you filed your motion for change of venue that day, January 24, 1995. Is that correct?

Mr. Cortes: That's correct, Your Honor.

The Court: Okay. I later granted you a motion for a continuance, and I'm giving you the opportunity to go ahead and have a hearing on your motion for change of venue. This case has been rescheduled for jury trial on February 28, 1995. Do you understand that?

Mr. Cortes: Yes, Your Honor, I do.

The Court: Are you telling this Court that you do not want a hearing on the motion for change of venue?

Mr. Cortes: I do not want another hearing on the motion for change of venue. I didn't get a hearing the first time.

The Court: You didn't have a hearing because you didn't timely file the motion.

Mr. Cortes: Again, Your Honor, then, I would imagine that, properly, it should have been set for Friday without being denied. My motion was denied.

I'm not filing a new motion now. If the State wants to file a motion, fine. I'll agree to it.

The Court: Are you telling this Court that you're, then, wanting this Court to dismiss your motion for change of venue?

Mr. Cortes: Your Honor, the way I understand it, my motion has been denied. I don't have another motion.

The Court: Your motion, as far as any denial was concerned, was based on the fact that you had announced ready for trial; and you wound up coming here and filing a motion for change of venue the day of trial.

Mr. Cortes: I believe, Your Honor, that I am entitled to do that. It's a constitutional issue. I can bring up a change of venue anytime before I raise— announce ready for trial.

The Court: And thereby—

Mr. Cortes: I did that.

The Court: And thereby delay the trial itself? Is that what you're telling me?

Mr. Cortes: That's not what I'm saying, Your Honor. I'm just saying it's a constitutional issue that can be brought up anytime before I announce ready for trial, and that's what I did.

Mr. Kirkendall: Your Honor, it's clear that Counsel is attempting to do nothing other than sandbag this Court.

The Court has given them every opportunity to have a hearing. He has clearly waived his right to a hearing on his

motion for change of venue. The State is ready to proceed and will remain ready throughout the day.

The Court: What is your motion again?

Mr. Cortes: If sandbagging is procedural errors, then that must be what I'm doing here. The procedural problem I see now— I raised the issue that I am entitled to bring up anytime before I announce ready for trial. That's exactly what I did. My motion was denied without any controverting affidavits or a hearing.

The Court: I am giving you that opportunity, and you're [not] taking advantage of it.

Mr. Cortes: Your Honor, I'm not filing another motion. My motion is denied. I think it's reversible error.

The Court: All right. Mr. Cortes, please. I want to go ahead and see that your client gets a fair trial. Okay? And I'm giving you this opportunity, and you're telling me in so many words— you're telling me in so many words that you don't want a hearing on your motion for change of venue.

Mr. Cortes: No, Your Honor. That's not what I'm saying. I'm saying that my motion was already denied on the record at least two times. I believe that if we continue it this way— I'm not bringing another motion because I think the way it was denied is reversible error. We could continue on this path, that's fine. I'll bring it up on appeal.

The Court: All right. Let me ask you this: Is there any [sic] other motions you are filing here prior to the trial of this case on [February] 28th?

Mr. Cortes: Yes, Your Honor, there are. I have today a motion for discovery. We don't have to hear it today, we can hear it later. I have correspondence from opposing counsel that I can go ahead and contact them concerning the D.P.S. lab. Now he has a list of the documents that my expert requested of me. We can get together and get these documents.

I also have a motion to suppress on your file. But the change of venue motion— my change of venue has been denied.

The Court: All right. Mr. Cortes, as far as the Court is concerned, I've given you the opportunity to have a hearing on your motion for a change of venue. As far as this Court is concerned, it appears that you do not want a hearing.

Mr. Cortes: Again, Your Honor, I believe that, again, it was denied, two times on the record. There is no motion if my motion has already been denied. I don't have another motion.

I had one motion. It was denied without controverting affidavits or without a hearing. It was not set for today to be heard. It was actually denied. And this date was set for a motion for change of venue, but it's not mine.

The Court: So, apparently, you're abandoning your motion for a change of venue?

Mr. Cortes: Pardon me?

The Court: You're abandoning your motion for a change of venue?

Mr. Cortes: No, Your Honor, I am not abandoning it. My motion has been denied.

The Court: That's all we have. Anything else?

Mr. Cortes: Thank you, Judge.

Mr. Kirkendall: May I be excused, Your Honor?

The Court: Wait a minute. Excuse me, one other thing so we are not playing this game on the 28th.

Mr. Cortes: I understand that, Your Honor. I—

The Court: No, no, no, no. Let's go on to another subject. You file another motion. Okay? I don't want to wind up hearing those motions the day of trial. So what I'm encouraging you to do is get your motion filed, and we'll set a date for those for hearing if it's necessary—

Mr. Cortes: Okay.

The Court: —so we don't wind up coming in here February 28th and having the same problem that we had this past Tuesday, the 24th of January, when you filed a motion at the last minute.

Gutierrez thus did not reurge his motion to change venue at the subsequent pretrial hearings held on February 17 and 27; he did not reurge his motion when he presented other last minute pretrial matters before trial began on February 28 or at any time thereafter; he did not object that he could not get a fair trial in Guadalupe County when the case was called for trial February 28 but instead announced "ready"; he conducted extensive voir dire without objecting; he did not object to proceeding with the panel he participated in selecting; and he did not reurge or object to the absence of a hearing at any later time during the guilt-innocence or punishment phases of the trial.

In short, after initially denying Gutierrez's motion to change venue, the trial judge effectively withdrew this ruling and held Gutierrez's motion in abeyance—as he was entitled to do. *Foster*, 779 S.W.2d at 854–55. Thereafter, Gutierrez simply refused to present his motion to change venue. He never reurged it, he never requested a hearing, he never objected to the absence of a hearing, and he never suggested he was constitutionally entitled to a hearing. Under these circumstances, I would hold the trial court did not abuse its discretion in denying Gutierrez's motion to change venue, *e.g., Penry v. State*, 903 S.W.2d 715, 727 (Tex.Crim.App.1995), *cert. denied*, — U.S. —, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995), because a "reasonable view of the record" supports the conclusion the trial court held his ruling on Gutierrez's motion in abeyance at the January 24, 1995 pretrial hearing and, thereafter, Gutierrez effectively withdrew and thus waived his motion. *See Jenkins v. State*, 912 S.W.2d 793, 811 (Tex.Crim.App.1993) (citing Tex.R.App. P. 52(a) and articles 28.01 and 31.03, Tex. Code Crim. Proc. Ann. (Vernon 1989)) (defendant effectively waived right to hearing on motion to change venue filed just before punishment phase of trial to begin); *cf. Long v. State*, 823 S.W.2d 259, 279 (Tex.Crim.App. 1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992) (defendant waived instructional error despite initial objection by later accepting court's charge); *Tucker v. State*, 771 S.W.2d 523, 534 (Tex. Crim.App.1988), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989). Any

other result promotes form over substance, invites reversals on a technicality that has absolutely no "fair trial" significance, and invites defendants to sandbag the trial court in contravention of the text, spirit, and purpose of Rule 52(a), Tex.R.App. P. *See Janecka v. State*, 823 S.W.2d 232, 243 (Tex.Crim.App. 1990).

While the literal text of the Texas Court of Criminal Appeals' opinions on this issue justifies the majority's result, I simply cannot and do not believe the Court intended this result to follow from its narrow holdings that a motion to change venue is of constitutional dimension and therefore need not comply with the deadlines contained in article 28.01, section 1(7) and 2, Tex.Code Crim. Proc. Ann. (Vernon 1989), in *Enriquez v. State*, 429 S.W.2d 141, 142 (Tex.Crim.App.1968), and *Revia v. State*, 649 S.W.2d 625, 626–27 (Tex. Crim.App.1983). *See Faulder v. State*, 745 S.W.2d 327, 338 (Tex.Crim.App.1987), *cert. denied*, — U.S. —, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996) (stating *Revia* held limitations of article 28.01 not bar to consideration of motion to change venue). As the court has made clear in its more recent opinions, the fact that article 28.01 does not bar consideration of a motion to change venue does not mean a motion to change venue cannot be waived. *See Jenkins*, 912 S.W.2d at 811; *Cooks v. State*, 844 S.W.2d 697, 730 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).

I would overrule Gutierrez's first point of error regarding racial discrimination in the Guadalupe County grand jury process along the lines set forth in the majority's opinion. In line with this dissent, however, I would also overrule Gutierrez's second and only remaining point of error. Therefore, I would affirm the trial court's judgment. For this reason, I respectfully dissent.